UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| CHRISTIAN IAN-TEMPLETON PRICE, Plaintiff, v. NANCY A. BERRYHILL, Defendant. | Case No. 16-cv-04624-NJV **ORDER RE MOTIONS FOR SUMMARY JUDGMENT** Re: Dkt. Nos. 19, 24 |

Plaintiff Christian Ian-Templeton Price seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was denied by the Appeals Council. The ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 5, 10). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment in part, grant Defendant's motion for summary judgment in part and remand this action for further proceedings.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108

F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF MEDICAL EVIDENCE**

Plaintiff claims to be disabled by degenerative disease of the lumbar spine, lumbar radiculopathy, degenerative disc disease of the cervical spine, a left hip effusion, chronic headaches, obesity, irritable bowel syndrome ("IBS"), depression, social phobia, and anxiety attacks. At the time of the ALJ hearing Plaintiff was forty-six years old. He was a special education student and has a GED. He has worked as a truck driver, laborer, and airplane refueling mechanic; his prior work was medium to heavy. (AR 78.)

Plaintiff had an on-the-job lifting injury on September 20, 2010, his alleged onset date, with low back pain and torn abdominal muscles. He also suffers from hip pain, neck pain, right (non-dominant) upper extremity pain and numbness, depression and anxiety. He testified that he was unable to afford medical care for a long period after his Workers Compensation claim was settled due to lack of insurance. (AR 61.)

**Physical Impairments**

Lumbar Pain

Between March 22, 2011, and November 15, 2014, treating physicians Tyson Campbell, D.O., Jason Anderson, D.O., and Shahram Abbassi, M.D., examined Mr. Price and found tenderness over the lumbosacral spine and the SI joints and the cervical spine, restricted range of motion of the lumbar spine, and intermittently positive straight leg raise testing. (AR 396-459, 529-530.) Bilateral lower extremity weakness was noted by Dr. Anderson on July 22, 2011; treatment for lumbarradiculitis and lumbosacral spondylosis has included lumbar facet injections. (AR 333-335.)

A lumbar MRI dated March 28, 2011, found L2 and L3 endplate changes, L3-4 disc bulge

2

with questionable impingement of left L3 nerve root in the foramen, and moderate bilateral facet arthropathy at L4-5. (AR 347, 385-386.)

A lumbar CT scan dated April 21, 2011, showed sclerotic endplate changes at several levels and facet degeneration at L4-5. (AR 347.) A repeat lumbar MRI dated October 21, 2014, found mild posterior broad-based disc protrusions from L3 to S1, with minimal contact on passing nerve root bilaterally at L4-5, and mild neural foraminal narrowing at L3-4 and L4-5 bilaterally. (AR 531.)

Hip and Groin Pain

Left hip enthesopathy, was noted by Dr. Anderson on August 18, 2011, and pain was worsened with activity. Although described as continuous, it was tolerable, and a return to work was attempted. (AR 369-374.) Work activity worsened Plaintiff's symptoms. (AR 426.) On January 24, 2012, and again on April 3, 2012, severe exacerbations of his radicular symptoms were noted. (AR 444, 463.)

Ultrasound results showed muscle strain within the belly of left abdominal oblique muscles. (AR 413.) On October 4, 2011, Tyson Campbell, D.O., wrote that he worried about "permanent impairment due to scarring" and recommended retraining for a less physically demanding job. (AR 433)

On May 17, 2012, it was Dr. Campbell's opinion that Plaintiff's restrictions were likely permanent, that he should not lift or pull greater than ten pounds, that he was unable to bend, crawl, or climb, and that he should not "sit or stand continuously for greater than one hour at a time, and he should not drive for greater than 30 minutes at any given time." (AR 477.)

Neck Pain

On August 14, 2014, primary treating physician Hal L. Grotke, M.D., found neck pain radiating to the right upper extremity with numbness and tingling, depression and anxiety, and years of cramping abdominal pain with diarrhea. (AR 498.) A cervical spine CT scan dated July18, 2014, showed multilevel disc space narrowing with moderate degenerative changes and diffuse posterior disc bulges with suggestion of small central posterior disc protrusion at C4-5 and C5-6, with bilateral foraminal narrowing. (AR 505-506.)

Plaintiff was seen for chronic back and neck pain on April 10, 2014. (AR 524.) On September 30, 2014, Dr. Grotke diagnosed acute lumbar radiculopathy, acute frontal sinusitis, cervico-occipitalneuralgia, and cervical degenerative disc disease. (AR 525.) Pain specialist Shahram Abbassi, M.D., examined Plaintiff on September 15, 2014, and assessed the following problems: left lumbar radicular pain; chronic neck pain secondary to multilevel mild diskogenic cervical narrowing from C4 to C5-6. (AR 530.)

Irritable Bowel Syndrome

Plaintiff testified his IBS would require him to be gone for an hour from his workstation almost every day due to stomach cramping. (AR 76.) He also testified he has diarrhea several times a week. (AR 74.) In August, 2014, his treating physician, Hal L. Grotke, M.D., noted that Plaintiff "has had years of intermittent cramping abdominal pain often associated with explosive diarrhea and occasionally with hematochezia and/or incontinence." (AR 498.)

Chronic Headaches

Plaintiff testified he had a history of frequent headaches. (AR 74.) The record is replete with evidence that the plaintiff suffers from headaches. (AR 335, 339, 347, 360, 367, 370, 377, 379, 418, 549.)

**Mental Impairments**

As the ALJ noted, Plaintiff has moderate problems with social functioning, maintaining concentration, persistence, and pace, and following instructions, due to his severe mental impairments. (AR 21.)

Consultative psychological examiner Gary R. McGuffin, Psy.D., examined Plaintiff on June 24, 2012, and found a history of panic attacks, three suicide attempts with ongoing occasional suicidal ideation, and current GAF of 49-54. He diagnosed Panic Disorder with Agoraphobia, Social Phobia, Alcohol Dependent, Sustained Partial Remission, Amphetamine Abuse by History, and Major Depressive Disorder Recurrent. Plaintiff was found to be currently capable of performing simple tasks. (AR 485-486.)

Elizabeth Drabkin, L.C.S.W., is Plaintiff's treating counselor. On July 21, 2014, she noted his complaints of overwhelming depression which made him unable to leave home for several

4

1  days in a row. She noted his extreme social difficulty which makes entering heavily populated
2  public places "unbearable" for him. (AR 560.)

### THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (id. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (id. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 17-33.)

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 19.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely „a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, degenerative disc disease of the cervical spine, a left hip effusion, obesity, a depressive disorder, social phobia, and an anxiety disorder. (AR 19.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the

burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id.* § 416.920(a)(4)(iv),(e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 20.). Next, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with several exertional and non-exertional limitations. (AR 23-31.)

At Step Four, the ALJ found that Plaintiff could not perform any of his past relevant work. (AR 31-32.) At Step Five, after consulting with a vocational expert, the ALJ found that there were a significant number of jobs that Plaintiff could perform in the national economy. (AR 32-33.) Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period. (AR 33.)

## DISCUSSION

Plaintiff presents three contentions for this court's consideration:

1. The ALJ committed harmful legal error by failing to properly analyze listing 1.04A for lumbar spine impairments as required at Step Three of the evaluation process.

2. The RFC is not based on substantial evidence because the ALJ included limitations not supported by substantial evidence in the record.

3. The ALJ committed harmful legal error in finding the plaintiff's irritable bowel syndrome and chronic headaches were not severe impairments.

<u>Lumbar Spine Impairments</u>

Plaintiff contends that the ALJ failed to adequately discuss his impairments in evaluating whether listing 1.04A was met or equaled. (AR 20.) The ALJ stated only, "relevant objective testing revealed no finding of actual cord or nerve root compromise . . . Therefore, the claimant's impairments do not satisfy the criteria under listing 1.04." (AR 20.) Plaintiff argues that the ALJ does not address the MRI results or the other positive findings that show the Plaintiff's condition meets or equals the listing. (AR 20.)

6

The required level of severity for listing 1.04A is initially met when a claimant has a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Second, in order to meet listing 1.04A, the disorder of the spine must be associated with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.*

Plaintiff argues that in this instance, the requirements of listing 1.04A are equaled as shown by the positive clinical findings of the record. (AR 390, 413, 465, 531) He claims that he would meet listing 1.04A, except it is not clear from the record whether the multiple positive straight leg raising tests were found in the supine position as well as sitting. (AR 434, 444, 447, 455, 459.)

Plaintiff argues that the first criterion of listing 1.04A is met because he has degenerative disk disease, facet arthritis and lumbar spinal stenosis resulting in compromise of a nerve root. (AR 390, 413, 462, 531.) An MRI of the lumbar spine of October 21, 2014, revealed mild broad-based posterior disc protrusion, also involving the neural foramina bilaterally with contact upon the passing L5 nerve roots bilaterally. (AR 531.) An MRI of the lumbar spine of March 28, 2011, found mild central canal stenosis at L4-5 and questionable impact of the extraforaminal left L3 nerve root. (AR 386.)

Plaintiff argues that the second criterion of 1.04A is equaled because he has evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight leg raising. (AR 334, 349, 359, 441, 444, 457, 455, 459, 529.) In May 2011, Plaintiff described his low back pain as "aching, numbness and exhausting." (AR 359.) It was noted that the pain was located in the midline of Plaintiff's low back and radiated to his left buttock down the anterior thigh(s) and posterior thigh(s) and into the

7

top of his foot/feet. (AR 359.) In March 2012 Plaintiff stated his inner left leg felt "extremely fatigued." (AR 455.) In June 2011, it was noted that his low back pain was "likely due to bilateral L3-4 and L4-5 facet mediated pain." (AR 349.) In June 2011, Jason Anderson, D.O., noted Plaintiff had a restricted range of motion at the lumber spine. (AR 359.) A decreased range of motion in the lumber spine was also noted in December 2011. (AR 441.) Shahram Abbassi, M.D., noted significant weakness with extension of the knee and flexion at the hip and diminished sensation at the left lower extremity. (AR 529). Plaintiff also had multiple positive straight leg raising tests. However, the reports do not state what position Plaintiff was in when the tests were performed, so Plaintiff argues that the listing is equaled rather than met. (AR 434, 444, 447, 455, 459.)

The ALJ provides no analysis of this medical evidence in regard to whether Plaintiff met Listing 1.04 for spine disorder resulting in nerve compression. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only.") The ALJ actually referenced the same 2014 MRI when stating "objective testing revealed no finding of actual cord or nerve root compromise." (AR 20, citing Exh. 13F/6.) But the decision does not address that part of the finding which states there is "contact upon the passing L5 nerve roots." (AR 531.) It also ignores the MRI in March 2011 that found "questionable impact of the extraforaminal left L3 nerve root by the L3-4 disc." (AR 386.) An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The only statement the ALJ made regarding the Listing was the statement that there was no evidence of nerve root compromise. (AR 20.) While the ALJ is not required to discuss all the evidence presented by a claimant, she must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (1984) (quoting *Carter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). Here, the ALJ did not explain why she rejected the above evidence, which was clearly probative, and this court cannot speculate on her reasons for doing so. *See Bray v. Comm'r of Soc. Sec. Admin*., 554 f.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual

findings offered by the ALJ --not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.) (citations omitted). Accordingly, the court will remand for the ALJ to explain her rejection of the evidence at issue.

Residual Functional Capacity

The RFC found by the ALJ included that "the claimant can stand and/or walk for no more than two hours during an eight-hour workday. Additionally, the claimant must switch positions between sitting and standing every hour for one to two minutes." (AR 23.) Plaintiff contends that the RFC is not based on substantial evidence because the ALJ included limitations that are not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ erred by relying on his own opinion that one or two minutes of standing would relieve Plaintiff's pain.

On May 17, 2012, Tyson Campbell, D.O., opined that Plaintiff should not sit or stand continuously for more than one hour at a time, should not drive for greater than thirty minutes at a time and should never bend, climb, or crawl. (AR 477.) As to the limitations on sitting and standing and driving, the ALJ gave Dr. Campbell's opinion "great weight." (AR 29.) However, in the RFC, the ALJ determined that the plaintiff could still do sedentary work, but he "must switch positions between sitting and standing every hour for one to two minutes." (AR 23.) While Dr. Campbell did not state for how long Plaintiff would need to stand, walk around, or lie down before he could return to sitting, Plaintiff argues that nothing in the record supports the ALJ's opinion that while he cannot sit for more than one hour straight, one to two minutes of standing would relieve the pain and allow for Plaintiff to sit again. In fact, Jason Anderson, D.O., noted that Plaintiff's back pain was "alleviated by lying in the supine position, lying in the prone position … [and] the symptom is exacerbated by standing for [a] prolonged period of time." (AR 337.) Dr. Anderson also found that Plaintiff's back pain was "exacerbated by sitting, standing, rising from sitting, bending forward, walking, driving a car and lifting objects." (AR 347.) Dr. Anderson noted the pain was alleviated by lying in the supine position and lying in the prone position. *Id*. In August, 2011, when describing Plaintiff's work restrictions, B. De La Bruere M.D. noted that Plaintiff should be allowed to vary his activity between sitting, walking and standing. (AR 472.)

As Plaintiff argues in his Reply, Defendant incorrectly characterizes the RFC as a sit-stand

option. (Opp. 19.) The RFC is for sedentary work with a maximum of two hours of standing and walking and Plaintiff was limited to "simple, repetitive tasks." (AR 23.) The ALJ specifically determined these limitations to only include unskilled jobs. (AR 32.) Social Security Ruling 83-12, which is the Commissioner's own interpretation of the regulations, states that "[u]nskilled jobs are particularly structured so that a person cannot ordinarily sit or stand at will."

Defendant correctly argues that the ALJ reviewed Plaintiff's complaints in conjunction with his medical records in reaching her determination regarding the RFC, discounting Plaintiff's complaints to some degree based on his reported functionality. (AR 28.) However, the fact that the ALJ reviewed the evidence is not sufficient. Defendant does not identify any evidence in the record indicating that one to two minutes of standing would relieve Plaintiff's pain to any degree, much less to the degree that he could work again. The court must find that the ALJ's determination was not supported by substantial evidence, and will therefore remand for the ALJ to further consider this issue.

Irritable Bowel Syndrome and Chronic Headaches

The ALJ found the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, degenerative disc disease of the cervical spine, a left hip effusion, obesity, a depressive disorder, social phobia, and an anxiety disorder. (AR 19.) The ALJ found the following impairments were non-severe: abdominal muscle strain, right shoulder impairment, and polysubstance abuse. (AR 20.) The ALJ did not address Plaintiff's IBS or headaches in this analysis. (AR 20.) Plaintiff contends that the ALJ committed harmful legal error by not considering Plaintiff's testimony at the administrative hearing regarding his IBS and headaches, and by not including these impairments in the RCF assessment.

Defendant correctly points out that Plaintiff did not list these conditions as an impairment in his application. (AR 85, 117-19, 238-39, 251.) He then argues incorrectly that Plaintiff waived his right to address these symptoms because he did not raise them "in the administrative proceedings." Plaintiff did raise the issues in the administrative proceeding, testifying as to his symptoms. (AR 74, 76.) It is undisputed however, that Plaintiff did not raise these issues in his application for disability benefits. Plaintiff has provided the court with no authority stating that

10

when determining severe impairments or making the RFC assessment, the ALJ must consider conditions not identified in the application for benefits. Plaintiff has therefore not shown legal error in the ALJ's failure to do so in this case.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that the parties' motions for summary judgment are GRANTED in part and DENIED in part as explained above. This case is REMANDED to the ALJ for further consideration of the first two issues.

**IT IS SO ORDERED**.

Dated: September 22, 2017

NANDOR J. VADAS
United States Magistrate Judge